**In the Matter of E. F.**

**No. 03–97–00803–CV.**

Court of Appeals of Texas, Austin.

Feb. 25, 1999.

---

of the Texas Family Code[1] and in failing to properly instruct the jury regarding accomplice witness testimony. We will affirm the juvenile court's judgment.

## BACKGROUND

On the evening of March 30, 1997, several juvenile boys including appellant, then 13 years of age, and two men gathered together at a convenience store. The two adults, David Carter and Christopher Reed, began to talk about robbing someone. Subsequently, the group noticed Jesus Manzanares enter the store. J.L., one of the juveniles, determined that Manzanares had money on his person. Carter announced that he was going to rob Manzanares and asked appellant if he "wanted to jack."[2] Appellant replied, "Yeah."

The group watched as Manzanares walked about the store. Manzanares left the store for a moment. When Manzanares reentered the store shortly thereafter, appellant reported this information to Carter. C.S., another juvenile, knew where Manzanares lived and told Carter which direction Manzanares would be headed. Carter then asked appellant to walk with him, and appellant followed Carter and Reed down the road. Manzanares left the store and walked down a different street.

When the three encountered Manzanares, Carter pointed a gun at Manzanares and demanded money. Manzanares repeatedly said the word "no" as he backed up toward appellant. Carter shot Manzanares. The group then fled, and appellant ran to Reed's house where he joined J.L. and C.S. Manzanares died of the gunshot wound.

The police arrested several juveniles, including appellant, J.L. and C.S., and charged them with capital murder.[3] At appellant's trial, J.L. and C.S. testified for the State.[4] The jury found that appellant engaged in delinquent conduct because he committed

Linda Icenhauer–Ramirez, Icenhauer–Ramirez & Hubner, P.C., Austin, for appellant.

Ronald Earle, Dist. Atty., Karyn D. Scott, Asst. Dist. Atty., Austin, for appellee.

Before Justices JONES, KIDD and YEAKEL.

LEE YEAKEL, Justice.

A jury found that appellant, a juvenile, did engage in delinquent conduct by committing the offense of capital murder. See Tex. Fam. Code Ann. § 54.03 (West 1996); Tex. Penal Code Ann. § 19.03 (West 1994). Appellant waived his right to have the jury determine his disposition, and the juvenile court assessed a 17–year determinate sentence. In two points of error, appellant argues that the juvenile court erred in failing to properly admonish him pursuant to section 54.03(b)(2)

1. See Tex. Fam.Code Ann. § 54.03(b)(2) (West 1996).

2. In street slang, "to jack" means to rob someone.

3. Carter and Reed were also arrested. The record, however, does not reflect whether they were charged or tried for this crime.

4. C.S.'s case was dismissed for insufficient evidence. J.L. was granted testimonial immunity for his testimony.

capital murder as a co-conspirator. Appellant waived his right to jury sentencing, and the juvenile court assessed a 17-year determinate sentence.

## DISCUSSION

### Failure to admonish

■ In point of error one, appellant argues that the juvenile court erred in failing to properly admonish him. Specifically, appellant contends that the juvenile court judge failed to follow the requirements of section 54.03 of the Texas Family Code because the court did not advise appellant that: (1) a juvenile court adjudication could be admissible during the punishment phase of any subsequent adult prosecution, and (2) a possible punishment disposition was probation until the age of 18. *See* Tex. Fam.Code Ann. § 54.03 (West 1996).[5] However, appellant did not raise this issue at trial.

In order to properly preserve a complaint for appeal, a party must make the complaint to the trial court by a timely request, objection, or motion. *See* Tex.R.App. P. 33.1(a). To circumvent this procedural requirement, appellant argues that the court's failure to follow section 54.03(b) is fundamental error that can be considered at any point in the proceeding even if the error was not properly preserved.

In *Pirtle v. Gregory*, 629 S.W.2d 919 (Tex. 1982), the supreme court discussed the history of fundamental or unassigned error in Texas jurisprudence:

"Fundamental error" in civil actions arose in Texas under old statutes that stated that cases on appeal could be reviewed "on an error in law either assigned or apparent on the face on the record." 2 Gammel, Laws of Texas 1562 (1898); 3 Gammel, Laws of Texas 393 (1898). The practice of appellate courts in considering unassigned error was the source of much mischief, and when the Texas Supreme Court promulgated its Rules of Civil Procedure in 1941, old article 1837 was repealed. Since that time, there has been no rule or statute that authorizes appellate consideration of errors for which there was no trial predicate that complained of the error. *McCauley v. Consolidated Underwriters*, 157 Tex. 475, 304 S.W.2d 265, 266 (1957); *Ramsey v. Dunlop*, 146 Tex. 196, 205 S.W.2d 979, 984 (1947) (Alexander, J., concurring). Fundamental error survives today in those rare instances in which the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas. State Bar of Texas, Appellate Procedure in Texas § 11.5 (2d ed.1979).

*Pirtle,* 629 S.W.2d at 920. Since *Pirtle,* the supreme court has consistently adhered to the rule that fundamental error only survives where the court lacks jurisdiction or the public interest is directly and adversely affected. *See Central Educ. Agency v. Burke,* 711 S.W.2d 7, 8 (Tex.1986); *Texas Indus. Traffic League v. Railroad Comm'n,* 633 S.W.2d 821, 823 (Tex.1982); *Cox v. Johnson,* 638 S.W.2d 867, 868 (Tex.1982); *see also Estate of Pollack v. McMurrey,* 858 S.W.2d 388, 394 (Tex. 1993) (Gonzalez, J. concurring).

As jurisdiction is not at issue here, we must examine the asserted error's effect on the public interest. Appellant suggests that the public interest is directly and adversely affected where the juvenile court fails to properly admonish the juvenile and directs

---

5. The Family Code instructs the trial court as follows:

   (b) At the beginning of the adjudication hearing, the juvenile court judge shall explain to the child and his parent, guardian, or guardian ad litem:

   (1) the allegations made against the child;

   (2) the nature and possible consequences of the proceedings, including the law relating to the admissibility of the record of a juvenile court adjudication in a criminal proceeding;

   (3) the child's privilege against self-incrimination;

   (4) the child's right to trial and confrontation of witnesses;

   (5) the child's right to representation by an attorney if he is not already represented; and

   (6) the child's right to trial by jury.

   Tex. Fam.Code Ann. § 54.03(b) (West 1996). It is not in dispute that the juvenile court warned appellant in partial compliance with the Family Code, namely five of the six required admonitions. Appellant's complaint is the failure of the court to give the second noted admonishment.

us to several instances where courts of appeals have found such failure to be fundamental error. These courts have opined that admonishments under section 54.03 of the Family Code are mandatory and failure to properly apply them constitutes fundamental error. *See In re T.F.*, 877 S.W.2d 81, 81–82 (Tex.App.—Houston [1st Dist.] 1994, no writ); *In re R.W.*, 884 S.W.2d 502, 502 (Tex. App.—Corpus Christi 1994, writ denied); *In re L.T.*, 848 S.W.2d 769, 770 (Tex.App.—Corpus Christi 1993, no writ); *In re O.L.*, 834 S.W.2d 415, 420 (Tex.App.—Corpus Christi 1992, no writ); *In re G.K.G. v. State*, 730 S.W.2d 182, 183–84 (Tex.App.—San Antonio 1987, no writ); *I.G. v. State*, 727 S.W.2d 96, 99 (Tex.App.—San Antonio 1987, no writ).

This Court has previously considered whether a juvenile court's failure to properly admonish a juvenile constitutes fundamental error. *See In re R.L.H.*, 771 S.W.2d 697, 702 (Tex.App.—Austin 1989, writ denied). We held that it did not. *See id.* In deciding *R.L.H.*, this Court considered and declined to follow the Fourth Court of Appeals' opinion in *I.G. See id.* The *I.G.* court reasoned that because the Family Code reflected the intent of the legislature that a child could not be adjudicated as delinquent without being given the prescribed admonishments, the issue was brought within the public interest. *See I.G.*, 727 S.W.2d at 99. We concluded that this was not a sufficient basis for finding fundamental error, stating that "[t]he standard in *I.G.* would create fundamental error in all causes involving any one of thousands of 'important' statutes." *R.L.H.*, 771 S.W.2d at 702. Of equal importance to our decision was the belief that the supreme court had not made a blanket exception to the law of appellate procedure for all family law matters. *See id.* at 702–03.

Appellant urges us to reconsider our decision in *R.L.H.* and further argues that this case is factually distinguishable from *R.L.H.*

In *R.L.H.* the appellant did not raise his complaint in his initial brief to this Court, but waited until his motion for rehearing to bring it forward. *See id.* at 702. Here, appellant's complaint is found in his original brief. This slight procedural difference in facts is of no consequence. In both cases the appellant failed to properly *preserve* the complaint for appeal by objecting at trial. It is this lack of preservation that forced the appellant in *R.L.H.*, and forces appellant here, to assert that the failure to admonish is fundamental error. If the failure to properly admonish is not fundamental error, we have nothing to review.

In *R.L.H.* we noted that "[a] direct, adverse effect on the public interest (i.e. fundamental error) is most commonly found when authority is improperly claimed or exercised." *Id.* at 703 n. 6. We cited as examples an instance where a public official was not properly elected,[6] and where the parties had no justiciable interest in the controversy.[7] *See id.* In revisiting this issue we conclude, as we did in *R.L.H.*, that the supreme court still has not extended fundamental error to cover juvenile admonishments. Fundamental error remains a "rarity" and a "discredited doctrine." *See American Gen. Fire & Cas. Co. v. Weinberg*, 639 S.W.2d 688, 689 (Tex.1982); *Cox*, 638 S.W.2d at 868.

We also observe that a recent amendment to the Family Code reflects the legislature's indication that irregularities in admonishing under section 54.03 do not constitute a direct adverse effect on the public interest as declared by the statutes of this state. *See Pirtle*, 629 S.W.2d at 920. The Family Code now specifically provides that to preserve error in admonishing a juvenile, the complaint must first be submitted to the trial court.[8] Appellant was charged with an offense occurring before September 1, 1997, the effective date of the amendment; so the amendment is not directly applicable to the

---

**6.** *See Ramsey v. Dunlop*, 146 Tex. 196, 205 S.W.2d 979, 983 (1947).

**7.** *See Holland v. Taylor*, 153 Tex. 433, 270 S.W.2d 219, 220 (1954).

**8.** "In order to preserve for appellate or collateral review the failure of the court to provide the child the explanation required by Subsection (b), the attorney for the child must comply with Rule 52(a) [now Rule 33.1(a)], Texas Rules of Appellate Procedure...." Act of June 19, 1997, 75th Leg., R.S., ch. 1086, § 10, 1997 Tex. Gen. Laws 4184 (Tex. Fam.Code Ann. § 54.03(i) (West Supp.1999)).

case before us. However, we construe the amendment as an indication of the legislature's disapproval of those cases that hold an unassigned admonishment error to be fundamental error.

We continue to hold that the failure of a juvenile court to properly admonish a juvenile pursuant to section 54.03(b) of the Family Code must be presented to the juvenile court in order to preserve the complaint for appeal. Such failure must be specifically assigned and is not fundamental error that can be raised for the first time on appeal. We overrule appellant's first point of error.

### Accomplice witness instruction

In his second point of error, appellant asserts that the juvenile court erred in failing to properly instruct the jury regarding accomplice witness testimony. Although the court instructed the jury in his charge about the abstract law concerning accomplice witness testimony, appellant argues that the juvenile court should have also instructed the jury that J.L. and C.S. were accomplices as a matter of law. As a result of this omission, appellant contends that the jury did not know that J.L. and C.S. were accomplices and did not apply the accomplice witness rule to their testimony.

■ When the evidence clearly shows that a witness is an accomplice as a matter of law, the trial court is under a duty to so instruct the jury. *See Solis v. State,* 792 S.W.2d 95, 97 (Tex.Crim.App.1990); *Harris v. State,* 645 S.W.2d 447, 454 (Tex.Crim.App.1983). Because both J.L. and C.S. were charged with the same offense as appellant, and they both admit to engaging in acts that played a contributing role in the robbery itself, they were accomplice witnesses as a matter of law. *See Holladay v. State,* 709 S.W.2d 194, 196 (Tex.Crim.App.1986) (witness was accomplice because he had been charged with committing same offense as appellant); *Ashford v. State,* 833 S.W.2d 660, 664 (Tex.App.—Houston [1st Dist.] 1992, no pet.) (witness was accomplice witness as matter of law because he was indicted for same offense as defendant even though he was not prosecuted for offense with which defendant was charged). We find, therefore, that the juvenile court erred in failing to instruct the jury that J.L. and

C.S. were accomplice witnesses as a matter of law.

■ To determine whether reversal is required in this case, we must now review the court's error in light of *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984). In that case the court of criminal appeals stated in pertinent part:

> If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is "calculated to injure the rights of defendant," which means no more than that there must be *some* harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.

*Almanza,* 686 S.W.2d at 171 (emphasis in original). Because the jury charge was timely objected to in this case, only *some* harm must result from the erroneous charge to warrant reversal. To ascertain the degree of harm, we must consider the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, counsel's arguments, and any other relevant information revealed by the record of the trial as a whole. *Id.*

■ Appellant argues that the jurors did not apply the "accomplice witness rule" to J.L.'s and C.S.'s testimony because they were not aware that J.L. and C.S. were accomplice witnesses as a matter of law. This error will result in some harm only if J.L.'s and C.S.'s testimony did not comply with the accomplice witness rule, as accomplice testimony alone will not support a conviction. *See Holladay,* 709 S.W.2d at 196. Pursuant to the rule, the testimony of an accomplice witness must be corroborated by independent evidence tending to connect the accused with the offense committed. Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979); *see Holladay,* 709 S.W.2d at 196. In addition, the testimony of an accomplice witness cannot be corroborated by another accomplice witness. *Moron v. State,* 779 S.W.2d 399, 401 (Tex.Crim.App.1985). We must, therefore, examine J.L.'s and C.S.'s testimony as well as the other evidence intro-

duced at trial to discern whether this testimony was sufficiently corroborated.

■ J.L.'s and C.S.'s testimony was similar in many aspects. They both testified about the events that occurred on March 30, 1997. In particular, J.L. and C.S. asserted that they were "hanging" with appellant, Carter, and Reed that day at a convenience store when Carter and Reed began to talk about robbing somebody. J.L. testified that appellant said he was willing to help them. J.L. provided further that Carter and Reed started to look for someone to rob, and J.L. determined, with Reed's assistance, that Manzanares had some money. According to J.L., Manzanares went outside to the back of the building for a moment. Carter went to see where Manzanares had gone, but Manzanares reentered the store soon thereafter. J.L. and C.S. testified that Carter, Reed, and appellant departed before Manzanares; according to both boys, C.S. knew where Manzanares lived and reported this information to Carter so that they would know which direction to go. In addition, J.L. and C.S. agreed that Manzanares left the store after this and began to walk down a different road. C.S. was riding around the area on his bicycle. J.L. testified that he stayed at the convenience store. C.S. stated that he caught up to the appellant who was walking slightly behind Carter and Reed, rode around for a short while, and caught up to the group for a second time. He saw Carter approach Manzanares and ask for money. When Manzanares repeatedly said "no," C.S. stated that he heard a gunshot and rode off; J.L. testified that he heard the gunshot as well. J.L.'s and C.S.'s testimony reflects that they joined appellant later.

After the incident appellant made two statements to the police. Both were introduced at trial. In these statements, appellant admitted to everything that J.L. and C.S. testified to and provided even more detail in certain areas.

■ All that is required to sufficiently corroborate an accomplice witness's testimony is evidence that tends to connect the accused with the commission of the offense; this evidence need not directly link the accused to the crime or establish guilt by itself. *Ashford*, 833 S.W.2d at 665; *see also Holladay*, 709 S.W.2d at 198. Appellant's statements clearly satisfy this standard, corroborating both J.L.'s and C.S.'s testimony. *See Ware v. State*, 475 S.W.2d 930, 932 (Tex.Crim.App. 1972) (accused's own statements standing alone sufficiently corroborated testimony of accomplice witness). In fact, appellant's statements support almost everything that J.L. and C.S. testified to and clearly connect appellant to the commission of the offense.[9] We find that appellant, therefore, suffered no harm as a result of the juvenile court's error.

## CONCLUSION

We conclude that appellant's first point of error, that the juvenile court failed to properly admonish appellant, was not properly preserved for appeal. In addition, we find that although the juvenile court erred in failing to instruct the jury that J.L. and C.S. were accomplices as a matter of law, this error was harmless because their testimony was sufficiently corroborated by appellant's own statements. Therefore, we affirm the judgment of the juvenile court.

---

9. We also note that other witnesses corroborated the testimony of J.L. and C.S. with regard to the crime itself and appellant's presence with the other participants on the day of the crime.