Doris WATTERS, Appellant/Cross–Respondent,

v.

TRAVEL GUARD INTERNATIONAL, Respondent/Cross–Appellant.

Nos. ED 83066, ED 83081.

Missouri Court of Appeals, Eastern District, Division Three.

May 18, 2004.

Russell F. Watters, St. Louis, for appellant.

Neal W. Settergren, St. Louis, for respondent.

LAWRENCE E. MOONEY, Judge.

In this action for recovery of an amount due under a travel-insurance policy, the trial court found coverage under the poli-

cy and granted summary judgment in favor of the insured, Mrs. Watters, awarding her the amount of her airfare that the insurer, Travel Guard International, had previously denied. The trial court, however, also granted summary judgment in favor of the insurer on Mrs. Watters's vexatious-refusal-to-pay claim. Lastly, the trial court denied prejudgment interest on Mrs. Watters's breach-of-contract claim. Both parties appeal. We find that both summary judgments were properly granted, but find that the court erred in denying Mrs. Watters prejudgment interest. Accordingly, the judgment is affirmed in part, and reversed in part.; the cause is remanded with instructions.

### Factual and Procedural Background

The material facts are largely undisputed. Mrs. Watters purchased a package trip to Ireland as part of a group tour. The trip included roundtrip airfare to Ireland, accommodations, sightseeing opportunities, guided tours, and some meals. Mrs. Watters also purchased a trip insurance policy from Travel Guard. This policy provided, in pertinent part, that in the event of a trip cancellation or interruption due to a covered reason,[1] Travel Guard would pay for "... unused prepaid payments...."

Mrs. Watters arrived at the St. Louis airport on the scheduled date of departure. Mrs. Watters did not have a direct flight from St. Louis to Ireland; rather, she was scheduled to fly from St. Louis to Newark, New Jersey, where she was then to catch a connecting flight to Ireland. Due to weather conditions, however, her scheduled flight to Newark was delayed for eight hours. Mrs. Watters avers that she and the other tour members informed the airline that, because of the delay, they would miss their connecting flight to Ireland. She further avers that the airline requested that she board the plane for Newark and advised her that, if she did not board the plane, she would forfeit her deposit for the trip. Whatever the conversations between Mrs. Watters and the airline, it is undisputed that Mrs. Watters boarded the plane bound for Newark.

Upon her arrival in Newark, Mrs. Watters avers that she indeed discovered that her Ireland vacation had to be canceled because she had missed her connecting flight and was advised that there would not be another flight to Ireland for several days, such that she would miss several days of the package tour. Mrs. Watters spent the night at the Newark airport and returned to St. Louis the next day.

After her return to St. Louis, Mrs. Watters submitted a claim to Travel Guard for the entire cost of her canceled trip. Travel Guard, however, did not reimburse Mrs. Watters for the entire cost of her trip. Rather, Travel Guard refunded only $1,757 of the $2,202 Mrs. Watters paid for the trip. The amount not reimbursed included $346, the price of the roundtrip airline tickets between St. Louis and Newark.[2]

---

1. Among the covered reasons are "weather conditions causing delay or cancellation of travel."

2. The sum of $346 for the airfare to and from New Jersey was provided by the travel agency. According to the accounting provided by the travel agency, the total amount paid by Mrs. Watters for the trip was $2202. Broken down, the trip costs were:
Airfare, St. Louis to Newark roundtrip: $346

Airfare, Newark to Ireland roundtrip: $728
Airport Tax: $60
Ireland land tour: $969
Insurance Premium: $99.
The reimbursement of $1,757 represents reimbursement for the roundtrip airfare from Newark to Ireland, the airport tax, and the Ireland land tour. The roundtrip airfare from St. Louis to Newark was not reimbursed, nor was the amount of the insurance premium.

In providing partial reimbursement, Travel Guard explained that the policy only covered "pre-paid, unused arrangements" for trips that are interrupted, and that the airfare that was used could not be reimbursed.

Mrs. Watters filed suit against Travel Guard for breach of contract, seeking actual damages for the portion of her claim that was denied. Mrs. Watters also claimed vexatious refusal to pay, and sought prejudgment interest and attorneys' fees. Travel Guard moved for summary judgment on both the breach-of-contract and the vexatious-refusal-to-pay claims. Mrs. Watters thereafter moved for partial summary judgment on her breach-of-contract claim only. The trial court granted summary judgment for Mrs. Watters on her breach-of-contract claim, awarding her $346, plus court costs. The court, however, also granted summary judgment for Travel Guard on the vexatious-refusal-to-pay claim. Lastly, the court denied prejudgment interest on Mrs. Watters's breach-of-contract claim. Both parties now appeal. Mrs. Watters appeals the court's denial of vexatious-refusal-to-pay penalties, as well as the court's denial of prejudgment interest; Travel Guard cross-appeals the court's decision finding coverage under the policy.

*Discussion*

*Jurisdiction*

Before addressing the parties' various allegations of error, we must first address our jurisdiction to hear this appeal. Travel Guard has filed a motion to dismiss this appeal for lack of jurisdiction, contending this Court lacks jurisdiction over the appeal because it involves a judgment of an associate circuit court in a case involving less than $3,000 in claimed damages. Thus, Travel Guard argues, pursuant to section 512.180 RSMo. (2000)[3], this Court is without jurisdiction and Mrs. Watters's exclusive remedy was to request a trial *de novo* in the circuit court.

 The right to appeal is purely statutory; where a statute provides no right to appeal, none exists. *Cammarata v. State Farm Mutual Automobile Insurance Companies*, 953 S.W.2d 160, 161 (Mo. App. E.D.1997). An appeal without statutory sanction confers no authority upon this Court except to enter an order dismissing the appeal. *Prosser v. Derickson*, 1 S.W.3d 608, 609 (Mo.App. W.D.1999). Section 512.180 governs the right to appeal from cases tried before an associate circuit court judge. *Id; McClain v. Stoddard County Sewer Co.*, 2 S.W.3d 162, 163 (Mo. App. S.D.1999). Section 512.180.1 provides:

> Any person aggrieved by a judgment in a civil case tried without a jury before an associate circuit judge, other than an associate circuit judge sitting in the probate division or who has been assigned to hear the case on the record under procedures applicable before circuit judges, shall have the right of a trial de novo in all cases where the pleading claims damages not to exceed three thousand dollars.

Only where the case does not fit this description may a party appeal directly to this Court. *Cammarata*, 953 S.W.2d at 161; *Prosser*, 1 S.W.3d at 609. Section 512.180.2 provides that a person has the

Though Mrs. Watters, in her various pleadings, stated that she paid a total of $2,303 for the trip, the extra $101 includes $10, attributable to a non-member bank fee to sign up for the trip, and $91, apparently refunded to her from the travel agency and never at issue in this case.

3. All further statutory references are to RSMo. 2000.

right to appeal to this Court in (1) a contested civil case, not described in section 512.180.1, tried with or without a jury before an associate circuit judge, or (2) a contested civil case tried on assignment by an associate circuit judge under procedures applicable before circuit judges, or (3) any misdemeanor or county ordinance violation case. *Federated Mortgage & Investment Company v. Jones,* 850 S.W.2d 113, 114 (Mo.App. W.D.1993).

■ In this case, Mrs. Watters's case was initially assigned to Division 27, a division of the Circuit Court of the City of St. Louis presided over by an associate circuit court judge. But, because she requested a jury trial, her case was subsequently transferred and heard in Division 29, also a division presided over by an associate circuit court judge. Local Rule 6.3 of the Twenty–Second Judicial Circuit provides that if any party to a contest pending in Division 27 requests a jury trial, the case is assigned to Division 29 and tried on the record under circuit court rules. Thus, because judgment in this case was rendered by an associate circuit court judge who had been assigned to hear the case under the procedures applicable before circuit court judges, under section 512.180.1, Mrs. Watters had the right to appeal to this Court, which she invoked by filing a timely notice of appeal. Accordingly, Travel Guard's motion to dismiss for lack of jurisdiction is denied.[4]

*Summary Judgment*

We now turn our discussion to the propriety of summary judgment in this case, beginning with Travel Guard's cross-appeal of summary judgment granted in favor of Mrs. Watters on her breach-of-contract claim, wherein the court found coverage under the policy for the round-trip airfare to New Jersey. Our review of the trial court's grant of summary judgment is essentially *de novo. ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). When considering appeals from summary judgment, we review the record in the light most favorable to the party against whom judgment was entered. *Id.* Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary-judgment motion. *Id.* Summary judgment is proper only in those situations where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04; *ITT Commercial Finance Corp.,* 854 S.W.2d at 377.

The trial court in this case granted summary judgment in favor of Mrs. Watters on her breach-of-contract claim, finding coverage under the policy for the St. Louis—Newark roundtrip airline tickets. The insurance policy states, in pertinent

**4.** As a preliminary matter, we also note that the Certificate of Insurance at issue in this case contains both a choice-of-law provision as well as an arbitration provision. The choice-of-law provision provides that the terms, conditions, and provisions of the policy are governed by the substantive law of Wisconsin, and that all disputes under the policy shall be governed and determined by Wisconsin law. The arbitration provision provides that all suits, actions or legal proceedings seeking determination of the rights and liabilities of the parties under the policy shall be submitted to binding arbitration. We find that the parties, as implied by their conduct, have waived enforcement of these two provisions. Travel Guard, and then Mrs. Watters, filed for summary judgment under Missouri law, and neither party objected to the application of Missouri law. On appeal, both parties agree that they have waived enforcement of the Wisconsin choice-of-law provision. Further, at no time has either party sought enforcement of the arbitration provision, and thus we find the parties have waived enforcement of this provision as well.

part, that in the event of a trip interruption due to a covered reason, the policy of insurance will pay for "unused prepaid payments or deposits for the Insured's trip...."[5] Travel Guard alleges the trial court erred in finding coverage because the policy only covers "unused" prepaid payments or deposits. Travel Guard posits that coverage does not exist under the policy for the tickets because they are not "unused," because Mrs. Watters flew from St. Louis to Newark, and back. Mrs. Watters, on the other hand, contends that she did not use any portion of her trip—which was a trip to Ireland, not New Jersey—because she purchased a package trip to Ireland, not New Jersey. She further argues that she did not get her trip to Ireland, and received no benefit or advantage or enjoyment in traveling to and from New Jersey. She contends the meaning of the term 'used,' as would be understood by an insured, includes the connotation that the insured received some sort of advantage from, accomplished some purpose, or received some benefit from the purported use. Finally, she argues, because the term

is reasonably susceptible to more than one interpretation, the term is ambiguous and must be construed in favor of the insured.[6] The critical issue then, is the meaning of the word "unused."

 Disputes arising from the interpretation and application of insurance contracts are matters of law for the court where there are no underlying facts in dispute. *See, e.g., Hunt v. Capitol Indem. Corp.,* 26 S.W.3d 341, 342 (Mo.App. E.D. 2000) *citing Southeast Bakery Feeds, Inc. v. Ranger Insurance Company,* 974 S.W.2d 635, 638 (Mo.App. E.D.1998). When interpreting an insurance policy, we must determine whether the language is ambiguous or unambiguous. *See Peters v. Employers Mutual Casualty Co.,* 853 S.W.2d 300, 302 (Mo. banc 1993). Where an insurance policy is unambiguous, it will be enforced as written absent a statute or public policy requiring coverage. *Id.* If the language is ambiguous, however, it will be construed against the insurer. *Id.* Whether a policy is ambiguous is a ques-

---

5. Specifically, Section B of the Certificate of Insurance states, in pertinent part, as follows:

**TOUR COST TRIP INTERRUPTION**

We will pay this benefit up to the Maximum Limit shown on the Schedule of Benefits if a trip is delayed or interrupted due to any of the following unforeseen reasons: . . . (b) weather conditions causing delay or cancellation of travel. . . .

*Trip Interruption:* We will pay this benefit up to the Maximum Limit shown on the Schedule of Benefits for trips that have been interrupted or delayed, due to the reasons shown at the beginning of this section.

We will pay for the following: (a) forfeited, non-refundable prepaid deposits or payments, or unused prepaid payments or deposits for the Insured's trip if the Insured's trip is interrupted. . . .

6. We recognize that in moving for summary judgment, Mrs. Watters referenced Section A of the policy regarding trip cancellation, rather than section B regarding trip interruption. The distinction is of little importance for pur-

poses of this action, as both sections of the policy contain the same language regarding what benefits will be paid. Section A of the Certificate of Insurance states, in pertinent part, as follows:

**TOUR COST TRIP CANCELLATION**

We will pay this benefit up to the Maximum Limit shown on the Schedule of Benefits if a trip is delayed or canceled due to any of the following unforeseen reasons: . . . (b) weather conditions causing delay or cancellation of travel. . . .

*Trip Cancellation Benefits:* We will pay this benefit up to the maximum Limit shown on the Schedule of Benefits for trips that are delayed or canceled before the scheduled trip Departure Date.

We will pay forfeited, non-refundable prepaid deposits or payments, or unused prepaid payments or deposits if the Insured's trip is canceled due to the reasons shown at the beginning of this section.

tion of law. *Gulf Insurance Company v. Noble Broadcast,* 936 S.W.2d 810, 813 (Mo. banc 1997). An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the policy. *Id.* at 814; *Peters,* 853 S.W.2d at 302. "Language is ambiguous if, when viewed in the meaning that would ordinarily be understood by the lay people who bought the policy, it is reasonably open to different constructions." *Eagle Boats, Ltd. v. Continental Insurance Company Marine Office of America, Corp.,* 968 S.W.2d 734, 736 (Mo.App. E.D.1998). We do not read a provision of an insurance policy in isolation, but rather, we read the provision in the context of the policy as a whole. *See, e.g., American States Insurance Company v. Mathis,* 974 S.W.2d 647, 649 (Mo.App. E.D.1998).

 The word "unused" creates an uncertainty or indistinctness in this case. The language of the policy is reasonably open to both constructions advocated by the parties. The meaning of the word "used" could reasonably mean to avail oneself of, to employ, to expend or consume, or to convert to one's service, as posited by Travel Guard. *See* Webster's Third New International Dictionary, Unabridged 2523–4 (1966). Yet, the word could also reasonably mean to accomplish some purpose or to get some benefit, as Mrs. Watters contends. *See Id.* Accordingly, because the words "used" and "unused" are both reasonably open to different constructions, Travel Guard's policy is ambiguous and the language must be construed in favor of the insured, Mrs. Watters. Therefore, Mrs. Watters's roundtrip air-

fare from St. Louis to Newark is covered by the policy. Travel Guard's point is denied. Summary judgment granted in favor of Mrs. Watters on her breach-of-contract claim is affirmed.

We now turn our discussion to Mrs. Watters's points on appeal challenging the court's entry of summary judgment in favor of Travel Guard on her vexatious-refusal-to-pay claim, and the court's denial of prejudgment interest. First, Mrs. Watters alleges that the trial court erred in granting summary judgment in favor of Travel Guard on her vexatious-refusal-to-pay claim because Travel Guard is not entitled to judgment as a matter of law. The crux of Mrs. Watters's argument is that, under the facts and circumstances of this case, the reasonableness of Travel Guard's conduct in refusing to reimburse her for the entire trip to Ireland is a question of fact that should have gone to the jury rather than being decided as a matter of law.

 The law is well-settled that for an insured to obtain a penalty for an insurance company's vexatious refusal to pay a claim, the insured must show that the insurance company's refusal to pay the loss was willful and without reasonable cause or excuse, as the facts would have appeared to a reasonable person before trial. *DeWitt v. American Family Mutual Insurance Co.,* 667 S.W.2d 700, 710 (Mo. banc 1984) *citing Groves v. State Farm Mut. Auto. Ins. Co.,* 540 S.W.2d 39, 42 (Mo. banc 1976); Section 375.296; Section 375.420.[7] The statute permitting penalties for an insurer's refusal to pay without

---

7. There are two vexatious-refusal-to-pay statutes, 375.420 and 375.296. For a discussion of the two statutes, see *Overcast v. Billings Mutual Ins. Co.,* 11 S.W.3d 62, 66 (Mo. banc 2000). The parties only reference section 375.420, and then only do so in their briefs on appeal. We note that travel insurance is not among those insurances expressly mentioned in section 375.420. The parties have not addressed the issue of whether travel insurance falls within the statutory phrase "or other insurance." We shall assume, without so deciding, for purposes of this appeal, that the phrase is inclusive of travel insurance.

reasonable cause or excuse, is penal in nature and must be strictly construed. *Legg v. Certain Underwriters at Lloyd's of London*, 18 S.W.3d 379, 387 (Mo.App. W.D.1999). There may be no vexatious refusal where the insurer has reasonable cause to believe and does believe there is no liability under its policy and it has a meritorious defense. *Wood v. Safeco Insurance Company of America*, 980 S.W.2d 43, 55 (Mo.App. E.D.1998). When there is an open question of law or fact, the insurance company may insist upon a judicial determination of those questions without being penalized. *Wood*, 980 S.W.2d at 55 *quoting Oliver v. Cameron Mut. Ins. Co.*, 866 S.W.2d 865, 870 (Mo.App. E.D.1993). "A litigable issue exists, for instance, when there are no Missouri cases directly addressing the coverage issue." *Wood*, 980 S.W.2d at 55; *see also, Hocker Oil Co., Inc. v. Barker–Phillips–Jackson, Inc.*, 997 S.W.2d 510, 522–3 (Mo.App. S.D.1999). The mere fact that a subsequent court decision is adverse to a insurance company's position is not sufficient reason for imposing the penalty. *Groves*, 540 S.W.2d at 42; *Wood*, 980 S.W.2d at 55. The existence of a litigable issue will not preclude a penalty, however, if the insurance company's attitude is shown to be vexatious and recalcitrant. *Wood*, 980 S.W.2d at 55.

 Mrs. Watters argues that there are facts and circumstances from which a reasonable person could conclude that Travel Guard's refusal to reimburse her for the entire cost of her trip to Ireland was willful and without reasonable cause, and thus, the matter was one for the jury. Namely, Mrs. Watters argues that Travel Guard's interpretation of its policy, and its argument over the meaning of the term "used," was unreasonable because it contradicted the plain language of the policy. Further, Mrs. Watters contends Travel Guard's refusal could be found unreasonable because one of Travel Guard's corporate representatives did not know how the $346 sum had been calculated, or who had done the calculation. This last contention of Mrs. Watters misrepresents the record, and is unpersuasive.

 Generally, a question of reasonableness is a question of fact for the jury rather than a question of law for the court. *Wunsch v. Sun Life Assurance Company of Canada*, 92 S.W.3d 146, 153 (Mo.App. W.D.2002). But, the question of reasonableness can be determined as a matter of law based upon undisputed facts. *Id.* "This is so because a question of fact exists only when fair-minded people, exercising reasonable judgment, could reach different conclusions on the issue in controversy." *Id.* When reasonable minds could not differ, summary judgment is properly granted. *Id.* Summary judgment has been found proper in other cases involving a vexatious-refusal-to-pay claim. *See, e.g., Id.* at 154; *Wood*, 980 S.W.2d at 55; *Hocker Oil Co., Inc.*, 997 S.W.2d at 522–3.

As a defending party moving for summary judgment, Travel Guard may establish its right to judgment as a matter of law under Rule 74.04 by showing: (1) facts that negate any one of Mrs. Watters's required proof elements; (2) that Mrs. Watters, after an adequate period of discovery, has not produced and would not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the her elements; or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly pleaded affirmative defense. *Wunsch*, 92 S.W.3d at 152; *Travers v. Universal Fire & Cas. Ins. Co.*, 34 S.W.3d 156, 160 (Mo.App. W.D.2000); *ITT Commercial Finance Corp.*, 854 S.W.2d at 381. Regardless of which of these three means Travel Guard employs, each establishes a

right to judgment as a matter of law. *Wunsch,* 92 S.W.3d at 152; *ITT Commercial Finance Corp.,* 854 S.W.2d at 381. Thus, if the undisputed facts negate Mrs. Watters's required element of proof that Travel Guard acted without reasonable cause in refusing full reimbursement, then Travel Guard is entitled to summary judgment on the vexatious-refusal-to-pay claim. *See Wunsch,* 92 S.W.3d at 153. We must determine whether, as a matter of law, Travel Guard acted with reasonable cause when it refused to pay the entire amount of the claim. *See Id.* In other words, we must determine whether reasonable minds could not differ as to whether Travel Guard acted with reasonable cause when it refused to reimburse Mrs. Watters for the entire cost of her trip. *See Id.*

Here, we hold that Travel Guard had reasonable cause in refusing to fully reimburse Mrs. Watters for the cost of her trip. The precise question presented to Travel Guard by Mrs. Watters's claim was novel. At the time Travel Guard was called upon to pay Mrs. Watters's claim, there were no Missouri cases addressing the interpretation of Travel Guard's policy regarding the term "unused," or addressing the coverage issue presented by Mrs. Watters's claim. Moreover, Travel Guard had no caselaw from other jurisdictions addressing the interpretation of its policy on this particular coverage issue. Thus, a reasonably litigable issue existed. That the trial court's decision was adverse to Travel Guard's position is an insufficient reason for imposing the penalty. Additionally, Mrs. Watters presented no evidence of a vexatious and recalcitrant attitude on the part of Travel ·Guard at the time it refused to cover her claim. Mrs. Watters, in her response to Travel Guard's motion for summary judgment on her vexatious-refusal-to-pay claim, was required to demonstrate specific facts showing there was a genuine issue for trial; she did not do so.

Rule 74.04(c)(2); *ITT Commercial Finance Corp.,* 854 S.W.2d at 381–2.

◼ Moreover, the purpose of allowing for vexatious-refusal penalties is to correct the evil of an arbitrary refusal for the sole purpose of delaying the plaintiff in the collection of the claim. *Morris v. J.C. Penney Life Ins. Co.,* 895 S.W.2d 73, 76 (Mo.App. W.D.1995). The facts and circumstances, as set forth in the record in this case, do not evidence such an arbitrary refusal on the part of Travel Guard. For example, in contrast to cases in which there was evidence of vexatiousness, the record here reveals Travel Guard reviewed and investigated Mrs. Watters's claim by contacting the travel agency to obtain written documentation and a breakdown of the trip costs. *See DeWitt,* 667 S.W.2d at 710 (adequacy of an insurer's investigation of a claim may be considered evidence of vexatiousness). And, Travel Guard stated its grounds for denial. *See Allen v. State Farm Mutual Automobile Insurance Co.,* 753 S.W.2d 616, 620–1 (Mo.App. E.D.1988) *citing Berry v. Federal Kemper Insurance Co.,* 621 S.W.2d 948, 954 (Mo.App. S.D.1981)(denial of liability without stating any ground for denial is sufficient to warrant the submission of vexatious damages). We hold that, as a matter of law, given the novel question of coverage and the dearth of evidence of a vexatious and recalcitrant attitude, Travel Guard had reasonable cause in refusing to fully reimburse Mrs. Watters for the cost of her trip. Reasonable minds could not differ. Accordingly, because Travel Guard negated Mrs. Watters's required element of proof that Travel Guard acted without reasonable cause in refusing full reimbursement, Travel Guard was entitled to summary judgment. Mrs. Watters's point is denied. The trial court's entry of summary judgment in favor of Travel Guard on Mrs. Watters's vexatious-refusal-to-pay claim is affirmed.

*Prejudgment Interest*

■ Lastly, we turn our discussion to Mrs. Watters's remaining point on appeal alleging that the trial court erred in denying her prejudgment interest on her breach-or-contract claim. Mrs. Watters contends that, as a matter of law, she is entitled to interest under section 408.020, the prejudgment interest statute. We agree.

■ Our review of this question of law is *de novo. Baris v. Layton,* 43 S.W.3d 390, 397 (Mo.App. E.D.2001). Section 408.020 states in pertinent part, as follows:

> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts ... after they become due and demand of payment is made....

Section 408.020 applies to insurance policies generally. *Schultz v. Queen Insurance Company,* 399 S.W.2d 230, 236 (Mo.App. E.D.1965); *see also Insurance Company of North America v. Skyway Aviation, Inc.,* 828 S.W.2d 888, 892 (Mo.App. W.D.1992). Under this section, prejudgment interest is only awardable on liquidated claims. *Baris,* 43 S.W.3d at 397. Generally, prejudgment interest on unliquidated claims is not recoverable, for the reason that where the person liable does not know the amount he owes, he should not be considered in default because of failure to pay. *Fohn v. Title Insurance Corporation of St. Louis,* 529 S.W.2d 1, 5 (Mo.1975); *Investors Title Co. v. Chicago Title Insurance Co.,* 983 S.W.2d 533, 538 (Mo.App. E.D.1998). In order to be liquidated so as to allow interest, a claim must be fixed and determined or readily determinable, but it is sufficient if the amount due is ascertainable by computation or by a recognized standard. *Baris,* 43 S.W.3d at 397; *see also Investors Title Co.,* 983 S.W.2d at 538; *H & B Masonry Co., Inc. v. Davis,* 32 S.W.3d 120, 125 (Mo.App. E.D.2000) *quoting St. John's Bank & Trust Co. v. Intag, Inc.,* 938 S.W.2d 627, 630 (Mo.App. E.D.1997) and *Dierker Associates, D.C., P.C. v. Gillis,* 859 S.W.2d 737, 746 (Mo.App. E.D.1993).

Here, the damages on Mrs. Watters's breach-of-contract claim are readily determinable and ascertainable by computation, and therefore liquidated. As Travel Guard's own investigation and documents reveal, Mrs. Watters paid a total of $2,202 for her trip. Travel Guard reimbursed Mrs. Watters $1,757, leaving unreimbursed the amounts for the roundtrip airfare to Newark, and the insurance premium. Clearly, the damages are readily determinable and ascertainable by simple computation.

■ Furthermore, Mrs. Watters made a demand for payment. Under section 408.020, prejudgment interest on liquidated claims is allowed only after demand of payment is made. *Baris.* If a demand for payment was not made prior to filing of a lawsuit, then the filing itself constitutes a demand. *Transamerica Insurance Company v. Pennsylvania National Insurance Companies,* 908 S.W.2d 173, 177 (Mo.App. E.D.1995); *see also, A.G. Edwards & Sons, Inc. v. Drew,* 978 S.W.2d 386, 397 (Mo.App. E.D.1998). An express allegation in the petition seeking prejudgment interest is not a prerequisite to an award of such interest. *Dierker Associates,* 859 S.W.2d at 746; *Holtmeier v. Dayani,* 862 S.W.2d 391, 406 (Mo.App. E.D.1993). This Court has held that a petition which prays that the court grant "such other relief as may be proper" is sufficient. *Id.* Here, the record does not reflect that Mrs. Watters made a demand prior to filing her lawsuit. Mrs. Watters, in her petition, however, pleaded that there was "due and

owing .... over $600.00 plus interest ..." and also prayed "this court for its judgment in the amount of $600.00 plus interest plus attorney's fees and penalties." Mrs. Watters sufficiently demanded interest. *See Holtmeier,* 862 S.W.2d at 406–7.

■ Travel Guard argues that Mrs. Watters is not entitled to prejudgment interest because she failed to make a definite demand, as she varied as to what precise amount she claimed Travel Guard owed her.[8] Travel Guard's argument is unpersuasive. As shown above, the amount remaining due to Mrs. Watters was readily ascertainable and she sufficiently demanded interest in her petition. Moreover, Missouri courts have allowed prejudgment interest for insurance claims where the parties did not agree to the amount due under the policy. *See Miller v. Farm Bureau Town & Country Ins. Co. of Missouri,* 6 S.W.3d 432, 440 (Mo.App. S.D.1999) *citing Catron v. Columbia Mut. Ins. Co.,* 723 S.W.2d 5, 7 (Mo. banc 1987). Further, an award of less damages than requested does not preclude an award of prejudgment interest on the ascertained damages. *See A.G. Edwards & Sons,* 978 S.W.2d at 397 *citing Catron,* 723 S.W.2d at 6.

■ Mrs. Watters's breach-of-contract claim comes under the purview of section 408.020; her claim is liquidated and she demanded payment by sufficiently demanding interest. However, the trial court declined to award interest. "The award of prejudgment interest in a case in which section 408.020 is applicable is not a matter of court discretion; it is compelled." *Baris,* 43 S.W.3d at 398 *quoting Holtmeier,* 862 S.W.2d at 407. Accordingly, the trial court erred in denying Mrs. Watters prejudgment interest. Mrs. Wat-

ters's point is granted. The judgment in regards to prejudgment interest is reversed, and the cause is remanded with instructions to the trial court to award Mrs. Watters prejudgment interest, as provided in section 408.020, running from July 12, 2002 (the date Mrs. Watters filed her petition) to May 16, 2003 (the date of the judgment). *See Baris,* 43 S.W.3d at 398; *A.G. Edwards & Sons,* 978 S.W.2d at 397.

The judgment is affirmed in part and reversed in part, and the cause is remanded with instructions.

CLIFFORD H. AHRENS, P.J., and WILLIAM H. CRANDALL, JR., J., concur.

---

**8.** Mrs. Watters, in her petition alleged damages of "over $600," and in her answers to interrogatories Mrs. Watters stated she was owed "$546," and in her motion for partial summary judgment, she alleged damages of "approximately $350."