Michael D. CROSSMAN and Kimberly H. Crossman, husband and wife, Appellants,

v.

Peter YACUBOVICH and Sharon Yacubovich, et al., Respondents.

No. ED 91947.

Missouri Court of Appeals, Eastern District, Division Five.

June 16, 2009.

Gary M. Siegel, Gina C. Mitten, Clayton, MO, for appellants.

William L. Sauerwein, John Hein, St. Louis, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

The plaintiff homeowners, Michael and Kimberly Crossman, appeal from summary judgment entered by the Circuit Court of St. Charles County against them and in favor of the defendant insurer, Lawyers Title Insurance Corporation. The homeowners filed three contract counts and one negligence count against the insurer, and the trial court granted summary judgment. At issue is an asserted exception to coverage contained in the title-insurance policy issued to the homeowners, who claim a loss based on petroleum pipelines and related easements that traverse their property. Because the subdivision plat, to which the exception in the title-insurance policy refers, does not clearly, precisely, and unambiguously show

the pipeline easements, the title-insurance policy does not effectively except coverage. Consequently, the insurer has not established its entitlement to judgment as a matter of law on the homeowners' contract counts. Therefore, we reverse and remand that portion of the judgment concerning the three contract counts to the trial court.[1]

The material facts are not in dispute. The homeowners contracted to purchase the home of the sellers, the defendants Peter and Sharon Yacubovich. Located in the Shadow Creek subdivision in the City of St. Peters, St. Charles County, Missouri, the homeowners chose the home because of its large backyard. They envisioned extending the deck, adding a pool, planting a garden, building a batting cage for their children, and fencing the yard for their dogs.

In connection with their home purchase, the homeowners hired Investors Title Company (the "title company") to conduct a title search, order a survey, arrange for a title commitment and title insurance, and conduct the homeowners' closing. The homeowners obtained their survey from Topos Surveying & Engineering Corporation (the "surveyor") and their title commitment and policy for title insurance from the insurer, Lawyers Title. Schedule A of the homeowners' title commitment described the insured property as "Lot 33 of Shadow Creek, Plat Two, a subdivision in St. Charles County, Missouri, according to the plat thereof recorded in Plat Book 21, Pages 55–56 of the St. Charles County Records." Schedule B–II asserted an exception to coverage for "[b]uilding lines and easements according to the plat thereof recorded in Plat Book 21, Pages 55–56." This exception refers to the Shadow Creek Plat Two subdivision plat. No mention whatsoever of a pipeline or pipeline easement appeared in the homeowners' survey, title commitment, or title-insurance policy.

Having secured a title search, survey, and title commitment, the homeowners completed their home purchase, and their title commitment converted to a title-insurance policy. The exception for "easements according to the plat" remained in the policy. Shortly after the homeowners completed their purchase, Explorer Pipeline representatives came through the neighborhood to clear the Explorer easement of trees and structures, and to mark its pipeline. Explorer removed nine trees from the homeowners' property, and the homeowners were alerted that their work shed would probably be removed eventually. Thus, the homeowners learned that an easement for a petroleum pipeline crosses their backyard, consuming roughly half of their property, and that as a result they cannot improve and use their backyard as hoped. The homeowners contend that neither the easement nor the pipeline was disclosed to them when they purchased their home. Discovery ultimately revealed the existence of three separate easements, owned by three separate companies, for multiple petroleum pipelines.[2]

---

1. We affirm the portion of the summary judgment entered on the negligence count because the homeowners did not brief this issue in their opening brief.

2. The following three easements are involved in the homeowners' suit. In 1930, John and Clara Schneider granted Ajax Pipe Line Company a thirty-foot-wide easement over the Schneiders' St. Charles County property for two pipelines for the transportation of oil, crude petroleum, gas, and similar products, along with accompanying telegraph and telephone lines. The easement granted Ajax the right to lay additional lines of pipe upon payment of further consideration. In 1966, Conrad Schneider granted Williams Brothers Pipe Line Company a thirty-foot-wide easement over his St. Charles County property for a pipeline for the transportation of liquids, gases, and/or solids. Shortly thereafter, Schneider agreed to widen the Williams

The homeowners sought coverage under their title-insurance policy for loss arising from the restricted use and diminished value of their property. The insurer denied the claim under the exception contained in the title-insurance policy. The homeowners filed a 15–count petition against the sellers, the title company, the surveyor, and the insurer. The homeowners pleaded one count of negligent misrepresentation against the insurer, as well as counts for breach of contract, vexatious refusal to pay, and declaratory judgment that the homeowners are entitled to compensation under the policy. The insurer filed a motion for summary judgment, which the trial court granted based on the policy exception for "[b]uilding lines and easements according to the plat thereof recorded in Plat Book 21, Pages 55–56." The judgment contains no reasoning as to its judgment on the negligence count, but appears to adjudicate all of the homeowners' counts against the insurer.

▮ The trial court determined there was no just reason for delay, and the homeowners appeal the entry of summary judgment in favor of the insurer.[3] The homeowners claim the trial court erred in granting summary judgment because the insurer failed to establish that the policy exception at issue expressly and specifically excluded coverage.

▮ Summary judgment allows a trial court to enter judgment for the moving party where the party demonstrates a right to judgment as a matter of law based on facts about which there is no genuine dispute. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 377 (Mo. banc 1993). The key to summary judgment is the party's undisputed right to judgment as a matter of law; it is not simply the absence of a fact question. *Id.* at 380. When considering an appeal from summary judgment, we review the record in the light most favorable to the party against whom judgment was entered, and we afford the benefit of all reasonable inferences to the non-movant. *Id.* at 376. Our review is essentially de novo. *Id.*

▮ Where the parties do not dispute the underlying facts, disputes arising from the interpretation and application of insurance contracts are matters of law for the court. *Watters v. Travel Guard Int'l*, 136 S.W.3d 100, 107 (Mo.App. E.D.2004). When interpreting an insurance policy, we must determine whether the language is ambiguous, which is a question of law. *Id.* "Language is ambiguous if, when viewed in the meaning that would ordinarily be understood by the lay people who bought the policy, it is reasonably open to different constructions." *Id.* at 108 (quoting *Eagle Boats, Ltd. v. Continental Ins. Co. Marine Office of Am. Corp.*, 968 S.W.2d 734, 736 (Mo.App. E.D.1998)).

Brothers' easement by ten feet. In 1971, Conrad Schneider granted Explorer Pipeline Company a fifty-foot-wide easement for the transportation of liquids, gases, solids, or mixtures thereof. The easements were recorded with the St. Charles County Recorder of Deeds. Plat Two of the Shadow Creek subdivision, which includes the homeowners' property, was recorded in St. Charles County in 1979.

3. A trial court may enter judgment on a single claim in a case with multiple claims and certify its judgment as final and appealable upon an express determination that no just reason for delay exists. Rule 74.01(b); *Comm. for Educ. Equal. v. State*, 878 S.W.2d 446, 450 (Mo. banc 1994); *Bannister v. Pulaski Financial Corp.*, 255 S.W.2d 538, 541 (Mo. App. E.D.2008). When the trial court resolves all issues and leaves open no remedies as to one of several defendants, the court may certify its judgment as final for purposes of appeal with regard to that defendant. *Gibson v. Brewer*, 952 S.W.2d 239, 245 (Mo. banc 1997).

■ Title insurance differs from most other types of insurance because it seeks to eliminate risk of loss arising from past events, rather than assuming risk of loss for future events and then distributing the risk among policyholders. Stephen M. Todd, *Title Insurance, in* 1 Mo. Real Estate Practice 2–1, § 2.2, at 2–4—2–5 (Mo. Bar ed., 4th ed.2000). A title insurer eliminates risk by searching county records for all documents affecting title to the subject property, and analyzing those documents to determine whether any defects exist. *Id.,* § 2.2, at 2–4. The insurer, however, must assume some risk that certain title defects will not appear in the records or will be overlooked or misinterpreted. *Id.*

■ The insurer receives one sum in consideration for its agreement to indemnify the insured, up to a specified amount, against loss caused by title defects or encumbrances on the subject property. Joyce D. Palomar, Title Insurance Law § 1:8, at 1–21 (2008). An exception is an uninsured interest in property, and is expressly eliminated from coverage via identification on a separate "Schedule B." D. Barlow Burke, Law of Title Insurance § 16.1, at 16:1 (2d ed.1993). Title insurance policies use exceptions to eliminate from coverage title defects that actually affect the insured property. Palomar, § 1:8, at 1–23. Title insurers are not required to insure every title defect, and excepting existing defects from coverage does not violate public policy or constitute an unfair trade practice. *Id.,* § 7:17, at 7–63. But "if a lien, encumbrance or other title defect is to be excepted from coverage, the title insurer must use clear, precise[,] and unambiguous language in the exception." *Id. See also* Burke, § 4.1, at 4:4 ("[T]he insurer who wishes to exclude a claim from coverage must have done so in clear and unambiguous language."); *Santos v. Sinclair,* 76 Wash.App. 320, 884 P.2d 941, 944 (1994)(unless policy specifically excludes easement, title insurer must insure it); *Amidano v. Donnelly,* 260 N.J.Super. 148, 615 A.2d 654, 657–58 (N.J.Super.Ct.App.Div.1992)(where title policy excepted easements recorded at specified deed books and page numbers, an easement reserved under a deed recorded elsewhere was not unambiguously removed from coverage); *San Jacinto Title Guar. Co. v. Lemmon,* 417 S.W.2d 429, 431–32 (Tex.Civ.App.1967)(where title policy specified exemptions from coverage but did not specifically mention, exclude, or except a water-line easement shown on plat, easement was not excepted from coverage).

■ "[P]rovisions limiting or cutting down, or avoiding liability in the coverage made in the policy are construed most strongly against the insurer." *Foremost Const. Co. v. Killam,* 399 S.W.2d 593, 596 (Mo.App.K.C.1966) (quoting *State Farm Mut. Auto. Ins. Co. v. Mid–Continent Cas. Co.,* 378 S.W.2d 232, 235 (Mo.App.St.L. 1964)). The insurer has the burden to prove that an exclusionary clause applies. *Id.* Likewise, ambiguities in the terms of the insurance policy, including ambiguities in the exceptions, generally are strictly construed against the insurer. James L. Gosdin, *Title Insurance: A Comprehensive Overview,* 2000 A.B.A. Sec. Real Prop., Prob. & Tr. L. 43.

In this case, the trial court granted summary judgment to the insurer based on an exception to coverage in the homeowners' title-insurance policy for "[b]uilding lines and easements according to the plat thereof recorded in Plat Book 21, Pages 55–56." The key question is whether the asserted exception in this case was stated in the requisite "clear, precise[,] and unambiguous language." Palomar, § 7:17, at 7–63.

A title-insurance policy may except a matter from coverage by reference to the provisions of another instrument without setting forth in detail the content of those

provisions.[4] *Southwest Title Ins. Co. v. Northland Bldg. Corp.*, 552 S.W.2d 425, 429 (Tex.1977). "[M]atters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract *in haec verba.*" *Wilson Mfg. Co. v. Fusco*, 258 S.W.3d 841, 845 (Mo.App. E.D.2008)(quoting *Dunn Indus. Group v. City of Sugar Creek*, 112 S.W.3d 421, 435 n. 5 (Mo. banc 2003)). When an instrument incorporates another by reference, the original and incorporated instruments must be construed together. *Id.* It follows that if an instrument incorporated by reference is determined to be ambiguous, then the provision incorporating it becomes ambiguous.

■ Here, the plat, incorporated by reference and on which the policy exception relies for all meaning, fails to clearly, precisely, and unambiguously identify the petroleum-pipeline easements crossing the homeowners' property. The first ambiguity is the number of easements. The record shows the existence of three easements for multiple petroleum pipelines, which traverse the homeowners' property. The easements were granted over the course of 41 years, and all three pre-date recording of the subdivision plat. The insurer in its brief repeatedly refers to "easements," in the plural. On the recorded plat, however, several lots east of the homeowners' property, the subdivision boundary is identified as the center line of an "existing 140' w. pipeline easement," in the singular. Next to the homeowners' property, the same subdivision boundary is identified as the center line of an "existing 106' w. esm't.," in the singular. The plat does not clearly, precisely, and unambiguously show the existence of multiple easements on the insured property.

The second ambiguity is the nature of the pipeline easement. The plat makes no mention anywhere of "petroleum," "oil," "fuel," or similar terms that would alert a reasonable person to the existence of petroleum-pipeline easements running through the subdivision. Note 2 on the plat exacerbates the ambiguity. It states, "Easements shown are for utility purposes unless noted otherwise." The plat's second page designates the subdivision's public streets and roadways to the City of St. Peters and further designates the streets as easements for sanitary sewers and for gas, water, electric power, and telephone lines. The "easements shown on said plat" are granted to the city and the respective utility companies "for the purpose of installing and maintaining public utilities and for sewer drainage purposes." Again, the plat contains no terms that would clearly, precisely, and unambiguously indicate to a reasonable person that the pipeline easements exist for petroleum-pipeline purposes rather than for ordinary utility purposes.

Finally, the insurer attached to its motion for summary judgment portions of the deposition given by the surveyor's president. The surveyor's president, who himself is a licensed land surveyor, testified that he could "see how the easement would not be clear upon a cursory review of the plat"; that upon a cursory review no easements appear to run across the back of the homeowners' property; and that the plat

---

4. The title insurer's ability to incorporate by reference may be significantly affected by section 381.071.2 RSMo. (2000), which states, "Except when allowed by regulations promulgated by the director, no title insurer, title agent, or agency shall knowingly issue any owner's title insurance policy or commitment to insure without showing all outstanding, enforceable recorded liens or other interests against the title which is to be insured." We have found no case interpreting section 381.071.2. We decline to consider the effect of this statute because it is not necessary for our decision, and the parties did not brief its effect.

shows the easement in a "substandard way." This witness also confirmed that, given how the plat identifies the easement, it is possible a person might believe the easement veers away from the subdivision and does not affect the homeowners' property.

All of the foregoing demonstrate that the plat is ambiguous as to the existence of multiple petroleum-pipeline easements. An insurance policy is ambiguous if, when viewed in the meaning that would ordinarily be understood by the lay people who bought the policy, it is reasonably open to differing constructions. *Watters*, 136 S.W.3d at 108. In reviewing the plat referenced by the title-insurance policy, a reasonable person would have no cause to believe that multiple petroleum-pipeline easements run through the Shadow Creek subdivision, or across the homeowners' property in particular.

When members of the public purchase policies of insurance[,] they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls[,] and their policies should be construed liberally in their favor to the end that coverage is afforded "to the full extent that any fair interpretation will allow."

*Amidano*, 615 A.2d at 658 (quoting *Danek v. Hommer*, 28 N.J.Super. 68, 100 A.2d 198, 202 (N.J.Super.Ct.App.Div.1953), *aff'd* 15 N.J. 573, 105 A.2d 677 (1954)).

The plat does not clearly, precisely, and unambiguously identify the three petroleum-pipeline easements and implies that all easements on the plat are for utility purposes. Further, even evidence submitted in support of the insurer's summary-judgment motion, concedes that the plat

shows the easement in a "substandard way." Thus, the plat is ambiguous, which renders ambiguous the policy exception incorporating the plat. We hold that the title-insurance policy does not clearly, precisely, and unambiguously except the petroleum-pipeline easements from coverage.

The insurer has not established that it is entitled to judgment as a matter of law on the homeowners' counts for breach of contract, vexatious refusal to pay, and declaratory judgment. We reverse and remand these counts to the trial court for further proceedings consistent with this opinion.[5]

NANNETTE A. BAKER, C.J., and KURT S. ODENWALD, J., concur.

---

5. We affirm that portion of the summary judgment entered as to the count for negligent misrepresentation against the insurer. We

grant the homeowners' motion to file their second supplemental legal file, but deny all other pending motions.