**DRURY COMPANY,**
Respondent/Cross–
Appellant,

v.

**MISSOURI UNITED SCHOOL
INSURANCE COUNSEL,**
Appellant,

and

**Jackson R–2 School District,**
Cross–Respondent,

and

**Warner–Nease–Bost Architects,
Inc., Defendant.**

**No. ED 100320.**

Missouri Court of Appeals,
Eastern District,
Division Three.

March 25, 2014.

Motion for Rehearing and/or Transfer
to Supreme Court Denied April
29, 2014.

Application for Transfer Denied
June 24, 2014.

Stefan J. Glynias, Lawrence J. Wadsack (Co–Counsel), St. Louis, MO, for appellant.

Willard D. McCarter, Edward V. Crites (Co–Counsel), Clayton, MO, for respondent.

## I. INTRODUCTION

ANGELA QUIGLESS, Judge.

Missouri United School Insurance Counsel ("MUSIC") appeals the judgment of the Circuit Court of Cape Girardeau County in favor of Drury Company ("Drury") on its claims for breach of contract and vexatious refusal to pay pursuant to sections 375.296 and 375.420.[1] Drury's claims arose out of its work as a subcontractor on a construction project for Jackson R–2 School District (the "School District") and MUSIC'S denial of Drury's claim under an insurance policy MUSIC issued to the School District.

MUSIC argues the trial court erred in: (1) granting Drury's motion for summary judgment because Drury's loss is excluded from coverage under the policy; (2) granting summary judgment for Drury based on the "ensuing loss" clause in the policy's faulty workmanship exclusion; (3) awarding damages, including attorneys' fees, to Drury under the vexatious refusal to pay statutes; (4) denying MUSIC'S motion to dismiss Drury's claims for lack of standing; and (5) denying MUSIC'S motion for continuance of the hearing on Drury's motion for summary judgment until after substantive depositions were taken in the case. Drury cross-appeals, asserting the trial court erred in dismissing its claim against the School District for breach of contract. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The record reveals the following undisputed facts: In 2006, the School District entered into a contract (the "prime contract") with general contractor Penzel Construction Company, Inc. ("Penzel") for an addition to the School District's high

---

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

school campus. The prime contract obligated the School District to purchase and maintain "property insurance written on a builder's risk 'all-risk' or equivalent policy form" that "shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Project."

Penzel and Drury entered into a subcontract, under which Drury was the subcontractor responsible for installing a cementitious roof deck known as Tectum as part of the School District's construction project. The prime contract between the School District and Penzel was incorporated by reference into the subcontract.

The School District obtained an insurance policy from MUSIC that provides "basic property coverages" as well as "special property coverages" including "automatic builder's risk." The policy states: "Where required by contract, this insurance shall include the interests of the Member [School District], the Contractor, all Subcontractors and Sub-sub contractors." The policy covers "all risks of direct physical loss ... to the property covered from any external cause except as hereinafter excluded." The policy provides: "PERILS EXCLUDED: MUSIC does not cover loss due to ... faulty workmanship or materials, unless loss by a peril not otherwise excluded in this Document ensues and then MUSIC shall be liable only for such ensuing loss."

In October 2007, Drury began installing the Tectum on the project's roof. Rain and other precipitation, including ice storms, occurred over the next several months, and the Tectum suffered moisture damage. Drury submitted a claim to MUSIC under the School District's policy for the damage to the Tectum. MUSIC denied the claim on the basis that the dam-

age was excluded from coverage under the faulty workmanship provision, among others.

Drury filed a petition against multiple defendants. In one count, Drury alleged that MUSIC breached the insurance contract by denying Drury's claim. In a second count against MUSIC, Drury asserted a vexatious refusal to pay claim under section 375.296 and sought statutory penalties, interest, and attorneys' fees. Drury also asserted a breach of contract claim against the School District, alleging the School District breached its obligation under the prime contract to obtain insurance protecting Drury's interest in the project as a subcontractor.[2]

MUSIC moved to dismiss Drury's two claims against it. The School District filed a separate motion to dismiss Drury's claim against the School District. The trial court denied MUSIC'S motion to dismiss but granted the School District's motion to dismiss.

Drury moved for summary judgment on its claims against MUSIC. MUSIC opposed the motion on the grounds that Drury was not an insured under the policy and even if it were, the claim was excluded under various provisions, including the faulty workmanship exclusion. With regard to its faulty workmanship argument, MUSIC acknowledged that Drury attempted to protect the Tectum from the weather by covering it but claimed that Drury's actions were inadequate. MUSIC also asserted that both the project architect and the engineer MUSIC hired to investigate the claim determined that Drury's faulty workmanship caused the loss.

---

**2.** In addition, Drury brought a negligence count against Warner–Nease–Bost Architects, Inc. Drury dismissed this count without preju- dice, and Warner–Nease–Bost Architects, Inc. is not a party to this appeal.

After MUSIC filed its response to the motion for summary judgment, Drury moved to strike MUSIC's exhibits, which supported MUSIC's faulty workmanship argument. MUSIC responded by filing a motion requesting a continuance to conduct depositions if the court decided to strike MUSIC's exhibits. The trial court did not rule on either Drury's motion to strike or MUSIC'S motion for a continuance.

The trial court held a hearing on Drury's motion for summary judgment and granted the motion. The trial court found that the policy covered Drury's interest in the project as a subcontractor based on the plain language of the policy. The trial court also determined that the policy covered Drury's loss, regardless of whether MUSIC's assertion of faulty workmanship was true, because the covered peril of rain ensued. The trial court awarded Drury actual damages, statutory damages for vexatious refusal to pay, interest, and attorneys' fees. MUSIC appeals, and Drury cross-appeals.

## III. DISCUSSION

### A. MUSIC'S Appeal

MUSIC asserts five points on appeal. We address these points out of order for ease of analysis.

#### 1. Drury's Standing to Bring Claims against MUSIC

In its fourth point on appeal, MUSIC claims the trial court erred in denying its motion to dismiss Drury's claims for breach of contract and vexatious refusal to pay. In particular, MUSIC maintains that Drury did not have standing to bring these claims because Drury was not a co-insured or third-party beneficiary under the policy. We disagree.

■■■ Whether Drury had standing to raise its breach of contract claim and accompanying vexatious refusal claim is a question of law that we review de novo. *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. banc 2007). "Where a question of standing has been raised, this Court has a duty to resolve that question before reaching substantive issues." *Id.*

■■■ "Only parties to a contract and any third-party beneficiaries of a contract have standing to enforce that contract." *Id.* "A third party beneficiary is one who is not privy to a contract or its consideration but who may nonetheless maintain a cause of action for breach of the contract." *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co., L.P.*, 75 S.W.3d 247, 260 (Mo. banc 2002) (quotation omitted). "Only those third parties for whose primary benefit the parties contract may maintain an action." *Id.* (quotation omitted). "It is not necessary for the parties to the contract to have as their 'primary object' the goal of benefiting the third parties, but only that the third parties be primary beneficiaries." *Id.* (quotation omitted).

■■■ "The intention of the parties is to be gleaned from the four corners of the contract, and if uncertain or ambiguous, from the circumstances surrounding its execution." *Id.* (quotation omitted). "Third party beneficiary rights depend on, and are measured by, the terms of the contract between the promisor and the promisee." *Id.* (quotation omitted). "Although it is not necessary that the third party beneficiary be named in the contract, the terms of the contract must express directly and clearly an intent to benefit an identifiable person or class." *Id.* (quotation omitted).

■■■ Here, the policy the School District obtained from MUSIC provides:

*BASIC PROPERTY COVERAGES*

BUILDINGS & CONTENTS

. . .

3. INTEREST AND PROPERTY COVERED:

g. Additions, renovations or new buildings in the course of construction are covered for the interests of the Member [School District] and, *where required by contract,* the interests of the Contractor, *Subcontractors* and Sub-subcontractors.

. . .

*SPECIAL PROPERTY COVERAGES*

1. AUTOMATIC BUILDER'S RISK:

a. PROPERTY COVERED—MUSIC covers all materials, equipment and fixtures installed or to be installed, temporary structures that are used in connection with construction, and supplies or materials on site, in transit or in storage to be used in the construction or installation at a Member's building project. *Where required by contract, this insurance shall include the interests of the Member, the Contractor, all Subcontractors and Sub-subcontractors.* This Document, however, does NOT cover any equipment, tools or machinery owned, leased, borrowed or rented by any contractor, subcontractor or any of its employees.

(emphasis added).

The plain and unambiguous language of the policy clearly expresses an intent that the policy benefit an identifiable class of persons—subcontractors on construction projects—provided the coverage is "required by contract." As a result, the policy covers such subcontractors as third-party beneficiaries of the policy, even though the policy does not specifically name any individual subcontractors. *See id.* ("it is not necessary that the third party beneficiary be named in the contract") (quotation omitted). The parties do not dispute that Drury was a subcontractor performing a portion of the work on the School District's construction project. Therefore, the policy covers Drury's interests if "required by contract."

The prime contract between the School District and Penzel, which was incorporated by reference into the subcontract between Penzel and Drury, required the School District to obtain insurance that included the interests of subcontractors. Specifically, the prime contract obligated the School District to purchase and maintain "property insurance written on a builder's risk 'all-risk' or equivalent policy form" that "shall include interests of the Owner, the Contractor, *Subcontractors* and Sub-subcontractors in the Project." (emphasis added). The prime contract's requirement that the School District's policy cover subcontractors triggered the insurance policy's coverage of all subcontractors, including Drury. Thus, Drury is a third-party beneficiary of the policy and has standing to raise a breach of contract claim and corresponding vexatious refusal to pay claim against MUSIC.

MUSIC argues that even if Drury is a third-party beneficiary of the policy, it is still uncertain whether Drury has standing under the vexatious refusal to pay statutes. To support this argument, MUSIC relies solely on *Desmond v. American Insurance Company,* 786 S.W.2d 144 (Mo. App.W.D.1989). *Desmond* is inapposite. There, the court stated: "[T]he law in Missouri until this time was unclear both as to direct payment under a premises medical payment coverage provision of [a liability] insurance policy, or whether a third party beneficiary even had standing to assert a vexatious refusal claim pursuant to section 375.420 ... *under these circumstances*" 786 S.W.2d at 148 (emphasis added). "These circumstances"

were an insurer's payment to an injured third party under a premises medical payment coverage provision of a liability insurance policy. *Id.* at 145, 147. Such circumstances are not present in this case, which concerns an insurer's refusal to pay a subcontractor covered under a builder's risk policy. Moreover, the *Desmond* court did not address the standing issue because the insurer did not withhold payment to the injured party. *Id.* at 148.

The trial court did not err in denying MUSIC's motion to dismiss Drury's claims. MUSIC'S fourth point is denied.

### 2. The Policy's Coverage of Drury's Loss

■ We address MUSIC's first and second points together because both concern the trial court's determination that the policy covered Drury's loss. In its first point on appeal, MUSIC argues the trial court erred in granting Drury's motion for summary judgment because Drury's loss is excluded from coverage under the policy. In its second point, MUSIC asserts the trial court erred in granting summary judgment for Drury because it erroneously interpreted and applied the "ensuing loss" clause in the faulty workmanship exclusion. We disagree with both contentions.

"Whether to grant summary judgment is an issue of law that this Court determines *de novo.*" *Seeck v. Geico Gen. Ins. Co.,* 212 S.W.3d 129, 132 (Mo. banc 2007). "The interpretation of an insurance policy is a question of law that this Court also determines *de novo*" *Id.*

■ "In interpreting an insurance contract, we must keep in mind that insurance policies are contracts; thus, the rules of contract construction apply." *Doe Run Res. Corp. v. Certain Underwriters at Lloyd's London,* 400 S.W.3d 463, 474 (Mo. App.E.D.2013). "The words of a policy must be given their plain and ordinary meaning consistent with the reasonable expectation and objectives of the parties, unless it is obvious that a technical meaning was intended." *Id.* "We read insurance policies as a whole to determine the parties' intent, and give effect to this intent by enforcing the contract as written." *Id.* "We must endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant." *Id.*

Here, the basic property coverage section of the policy states: "PERILS COVERED: MUSIC provides coverage against all risks of direct physical loss ... to the property covered from any external cause except as hereinafter excluded." The builder's risk section of the policy provides more specifically: "MUSIC covers all materials, equipment and fixtures installed or to be installed, temporary structures that are used in connection with construction, and supplies or materials on site, in transit or in storage to be used in the construction or installation at a Member's building project." In addition, the builder's risk section states: "The perils covered are extended beyond those previously defined by including loss by rain, snow, sleet, sand or dust to covered property in the open."

The Tectum was "covered property" because it was a material "installed or to be installed" at the School District's building project. The Tectum was also "in the open" on the project's roof. Drury asserted in its statement of material facts that there were "several significant precipitation events" that winter, including "rain, snow, sleet and ice," and that the Tectum sustained damage as a result of the weather. MUSIC admitted that "weather conditions were wet that winter" and that "ice storms and winds" occurred. Under the plain language of the policy, the damage to

the Tectum resulting from "rain, snow, [or] sleet" is covered.

■■ MUSIC argues that all-risk policies do not cover losses that are not fortuitous and that Drury's loss was not fortuitous. MUSIC correctly notes that "[u]nder an all-risk insurance policy, recovery will be allowed for all *fortuitous* losses, unless the policy contains a specific provision expressly excluding the loss from coverage." *Black & Veatch Corp. v. Wellington Syndicate*, 302 S.W.3d 114, 123 (Mo.App.W.D.2009) (emphasis added) (quoting *Missouri Commercial Inv. Co. v. Employers Mut. Cas. Co.*, 680 S.W.2d 397, 400 (Mo.App.E.D.1984)). However, we find distinguishable the federal case MUSIC primarily relies on to support its argument that Drury's loss was not fortuitous: *University of Cincinnati v. Arkwright Mutual Insurance Company*, 51 F.3d 1277 (6th Cir.1995). There, the Sixth Circuit, applying Ohio law, held that the insured's loss was not fortuitous because the insured undertook "deliberate damage-inducing actions with known consequences" when it made a business decision to remove asbestos from a building. 51 F.3d at 1282, 1284. Here, by contrast, MUSIC acknowledges that Drury attempted to protect the Tectum from the weather but claims that Drury's actions were inadequate. Unlike in *University of Cincinnati*, MUSIC does not allege that Drury undertook deliberate damage-inducing actions.

■■ MUSIC also contends that the policy's faulty workmanship provision expressly excludes Drury's loss from coverage.[3] That provision states: "PERILS

EXCLUDED: MUSIC does not cover loss due to ... faulty workmanship or materials, *unless loss by a peril not otherwise excluded in this Document ensues* and then MUSIC shall be liable only for such ensuing loss." (emphasis added). As discussed above, the covered peril of "loss by rain, snow, [or] sleet" ensued. Because Drury sustained an ensuing loss from the precipitation, MUSIC is liable for that ensuing loss under the plain language of the policy regardless of whether Drury's workmanship was faulty.

MUSIC maintains that the "ensuing loss" language is subordinate to and dependent on the faulty workmanship exclusion and should not be interpreted to abrogate the exclusion. To support this contention, MUSIC cites cases from other jurisdictions including *TMW Enterprises, Inc. v. Federal Insurance Company*, 619 F.3d 574 (6th Cir.2010), a federal diversity case governed by Michigan law. However, we do not find *TMW* persuasive because MUSIC is essentially urging us to rewrite the policy, which Missouri law does not permit us to do. *See Jones v. Mid–Century Ins. Co.*, 287 S.W.3d 687, 691 (Mo. banc 2009). With regard to the other cases MUSIC cites, we find them distinguishable because they concern different legal issues and policy language or involve other states' legal principles that do not bind us. *See, e.g., BSI Constructors, Inc. v. Hartford Fire Ins. Co.*, 705 F.3d 330, 334 (8th Cir.2013) (applying Missouri law, court considered whether an ensuing loss provision was ambiguous); *Friedberg v. Chubb & Son, Inc.*, 691 F.3d 948, 953 (8th Cir.2012) (stating that under Minnesota law, ensuing loss provisions ap-

---

**3.** Additionally, MUSIC maintains that Drury's loss fell under the policy's exclusions for "deterioration," "processing or work upon the property," and "wet or dry rot." However, we decline to consider these arguments because MUSIC fails to develop them beyond

conclusory statements. "[A] contention that is not supported with argument beyond conclusions is considered abandoned." *Goudeaux v. Bd. of Police Comm'rs of Kansas City*, 409 S.W.3d 508, 522 n. 18 (Mo.App.W.D. 2013) (quotation omitted).

ply "only to distinct, separable, ensuing losses") (quotation omitted).

Moreover, we note that another exclusion in MUSIC's policy clearly accomplishes the result MUSIC seeks for the faulty workmanship exclusion. The policy states that the terrorism exclusion "applies *regardless of any other cause or event* that in any way contributes concurrently or in sequence to the loss . . . ." (emphasis added). Had MUSIC intended the faulty workmanship exclusion to apply regardless of any other cause of damage such as rain, it could have drafted the exclusion in that way.

"When insurance contracts are unambiguous, they will be enforced as written absent a public policy to the contrary." *Steele v. Shelter Mut. Ins. Co.*, 400 S.W.3d 295, 298 (Mo. banc 2013). MUSIC does not argue that the insurance contract is ambiguous or that public policy compels us to ignore its plain language. Accordingly, we enforce the policy as written and hold that the trial court did not err in granting summary judgment for Drury on the basis that the policy covered Drury's loss. MUSIC's first and second points are denied.

### 3. Vexatious Refusal to Pay

In its third point on appeal, MUSIC asserts the trial court erred in awarding damages, including attorneys' fees, to Drury under the vexatious refusal to pay statutes. MUSIC alleges that Drury lacked standing to bring its vexatious refusal claim, which is an argument we disposed of in our discussion of point four above and need not address further. MUSIC also contends that it had a reasonable basis to believe and did believe there was no coverage under the policy and it had a meritorious defense to Drury's claim. We disagree.

"Sections 375.296 and 375.420 allow penalties to be assessed against an insurer when it refuses to make payment, upon demand and in accordance with the policy, vexatiously, willfully and without reasonable cause." *Legg v. Certain Underwriters at Lloyd's of London*, 18 S.W.3d 379, 387 (Mo.App.W.D.1999). The provisions in section 375.420 for attorneys' fees and a ten to twenty percent penalty "obviously aim to make the contracting party whole in a practical sense and to provide an incentive for insurance companies to pay legitimate claims without litigation." *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 67 (Mo. banc 2000).

"[A]n insurer is permitted to question or contest its liability if it has reasonable cause to believe, and does believe, that it has no liability under the policy and that it has a meritorious defense." *Legg*, 18 S.W.3d at 387 (quotation omitted). Thus, "where there is an open question of law or fact relating to a claim under an insurance policy, the insurer may insist upon a judicial determination of those questions without being penalized for vexatious refusal to pay." *Id.* "The test for a vexatious refusal claim is not the final resolution of the coverage issues but how willful and unreasonable the insurer's refusal was as the facts appeared to a reasonable and prudent person at the time the insurer was asked for coverage." *Id.* (quotation omitted).

"Generally, a question of reasonableness is a question of fact for the jury rather than a question of law for the court." *Watters v. Travel Guard Int'l*, 136 S.W.3d 100, 109 (Mo.App.E.D.2004). "But, the question of reasonableness can be determined as a matter of law based upon undisputed facts." *Id.* "This is so because a question of fact exists only when fair-minded people, exercising reasonable judgment, could reach different conclusions on

the issue in controversy." *Id.* (quotation omitted). "When reasonable minds could not differ, summary judgment is properly granted." *Id.* "Summary judgment has been found proper in other cases involving a vexatious-refusal-to-pay claim." *Id.*

▮ MUSIC argues it had a reasonable basis to believe the policy did not cover Drury's loss because both the project architect and the engineer MUSIC hired to investigate the claim determined that Drury's faulty workmanship caused the loss. However, there is no evidence in the record that MUSIC's review of the claim involved consideration of the full text of the faulty workmanship exclusion, which provides coverage irrespective of workmanship when a covered peril ensues. Instead, from the record it appears that MUSIC focused its review of the claim on gathering evidence that Drury's workmanship was faulty. In its letter denying Drury's claim, MUSIC quoted the faulty workmanship exclusion in full but provided no explanation for why the exclusion would apply despite the ensuing loss language.[4] Given MUSIC's failure to consider the plain language of its policy, it did not have a reasonable basis to believe it had no liability. *See McCarty v. United Ins. Co.,* 259 S.W.2d 91, 93–94 (Mo.App.1953) (affirming vexatious refusal award where the insurer maintained that the claim fell within an exclusion despite the policy's clear language affording coverage).

MUSIC also maintains that the coverage issue involved an open question of law that it was entitled to litigate without being penalized for vexatious refusal to pay. MUSIC bases this contention solely on Drury's statement in support of its motion for summary judgment that "one must look outside Missouri" for cases discussing "the detailed workings of 'all-risk' insur-

ance." But here, the plain language of the policy, which MUSIC does not claim is ambiguous, requires coverage. MUSIC does not explain why this court would need to examine cases discussing "the detailed workings of 'all-risk' insurance" to dispose of the coverage issue presented here.

The trial court did not err in awarding damages to Drury for vexatious refusal to pay. MUSIC's third point is denied.

### 4. MUSIC's Motion for Continuance

In its fifth point on appeal, MUSIC argues the trial court erred in denying its motion for continuance of the hearing and ruling on Drury's motion for summary judgment until after substantive depositions were taken in the case. After MUSIC filed its response to Drury's motion for summary judgment, Drury moved to strike MUSIC's exhibits, which supported MUSIC'S allegation that the workmanship was faulty. MUSIC responded by filing a motion requesting a continuance to conduct depositions *if* the court decided to strike its exhibits. It appears from the record that the trial court did not rule on either Drury's motion to strike or MUSIC'S motion for a continuance. In any event, because we have affirmed the trial court's determination that MUSIC is liable for Drury's loss regardless of whether the workmanship was faulty, MUSIC'S fifth point is denied as moot.

### B. Drury's Cross–Appeal

In its sole point on cross-appeal, Drury asserts the trial court erred in dismissing its breach of contract claim against the School District. In that claim, Drury alleged that the School District breached its obligation under the prime contract with Penzel to obtain builder's risk insurance

---

**4.** MUSIC'S denial letter does not mention its argument on appeal that Drury was not a co-insured or third-party beneficiary under the policy.

protecting Drury's interest in the project as a subcontractor. Drury acknowledges that this point is moot if we affirm the judgment against MUSIC. Given our disposition of MUSIC's appeal, we deny Drury's sole point on cross-appeal as moot.

## IV. CONCLUSION

The judgment of the trial court is affirmed.

MARY K. HOFF, P.J., and KURT S. ODENWALD, J., Concurs.